### WEINUS v. LIGHT et al.

(Supreme Court, Appellate Term. February 2, 1911.)

1. INJUNCTION (§ 230*)—CONTEMPT—EVIDENCE.

　　It is insufficient evidence that defendant violated an injunction against his disposing of his property, so as to authorize an order adjudging him guilty of contempt, that five checks, aggregating $9.10, against his bank account, were presented and cashed after service of the order of injunction, three of them 3 to 6 days, another 20 days, and another 50 days thereafter; defendant swearing that they were not delivered after the service of the order, though not producing them, but stating that they were lost.

　　[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 509–516; Dec. Dig. § 230.*]

2. CONTEMPT (§ 8*)—BRIEFS.

　　The filing of a brief in the Appellate Term, containing an unwarranted, contemptible, and contumacious attack on the trial judge, is a contempt of the court.

　　[Ed. Note.—For other cases, see Contempt, Cent. Dig. § 14; Dec. Dig. § 8.*]

Appeal from City Court of New York, Special Term.

Action by Morris Weinus against Benjamin Light and others. From an order adjudging defendant J. Lewis Weinberg guilty of contempt of court, he appeals. Reversed, and motion denied.

Argued before HENDRICK, LEHMAN, and DELANY, JJ.

J. Lewis Weinberg, in pro. per.
Henry Kuntz, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LEHMAN, J. The defendant J. Lewis Weinberg was enjoined by order of a justice of the city court from disposing of any of his property. Subsequently the court adjudged him guilty of disobedience of the injunction, and fined him the sum of $250. I hardly think that any person can read the voluminous record herein without receiving the impression that the defendant has been guilty of a willful disobedience of the injunction; but a careful examination of the papers discloses that this impression is based rather upon the apparent falsity of the defendant's denials than upon any evidence which the plaintiff adduced to prove his assertions. The question for us to determine, therefore, is whether, even though we may disregard as untrue all the allegations of the defendant not corroborated by other circumstances, there is sufficient evidence to sustain the court's finding of fact.

The order adjudges the defendant guilty of "willfully and deliberately withdrawing certain moneys belonging to him, and to which moneys he had legal title, from the Fulton Trust Company," and also of withdrawing moneys from the Public Bank, and "of disposing of other property and moneys to which said defendant and judgment debtor had legal title, as appears from the moving affidavits herein." There is no evidence in the affidavits of any disposition of any property or moneys except that which was on deposit in the trust company or in the bank. It is true that on the defendant's examination he was asked as to certain property which he had formerly owned, and testified to its assignment to his brother-in-law. While this assignment was perhaps fictitious, it was made before the injunction was issued or the judgment was rendered, and is therefore immaterial to this proceeding. The moneys drawn from the Public Bank were in the name of the defendant's sister. The account was opened the day before the injunction order was served, though probably after the defendant knew of its existence. The defendant claims that this account represents rents collected by him from houses owned by his sister, and that he had power to draw upon the account, because he conducted all her business. The account had previously been in his name for convenience. He denies absolutely any personal interest in the deposit, or in the property from which the rent issued, and is corroborated by his sister, who claims to own it. There are circumstances connected with the deposit that lead to the suspicion that the moneys drawn did in fact belong to the defendant. There is, however, no reason to doubt that these moneys do represent the rent of houses standing in the sister's name. The houses were conveyed to her several years before, and there is no evidence that the transfer was fictitious at that time. Mere suspicion cannot be considered proof, especially when met by the direct affidavit of the defendant and his sister.

The more serious question is whether or not there is sufficient evidence to justify a finding that defendant has withdrawn moneys from the account in his own name in the Fulton Trust Company after the service of the injunction order. The court below in its opinion re-

fers only to this withdrawal, and the order punishing for contempt is based mainly, if not wholly, upon this alleged disobedience. It appears that on June 3, 1910, at the time the injunction was issued, the defendant had a small sum standing in his name in the Fulton Trust Company. The account was balanced at the end of July, and the account showed that eight checks were cashed between June 3d and July 23d. When the account was balanced, the defendant received 25 vouchers, but at the trial produced only 20, and gave some explanation of his alleged inability to produce the remaining 5. The five lost checks aggregate $9.10, and were cashed at the bank after June 3d. The defendant positively swears that none were delivered after June 3d. The plaintiff claims that the proof that these five checks were cashed after June 3d is sufficient to sustain a finding that the moneys they represent were drawn after that date. He does not claim that the other three checks cashed after June 3d were also drawn in disobedience of the injunction, because those checks were produced, and apparently show on their face that they were drawn earlier. It seems to me that, even without the production of the remaining checks, no inference can fairly be drawn that they were delivered after June 3d merely from the fact that they were presented thereafter. Three of the checks were presented between June 6th and June 9th. The other checks were presented on June 23d and July 23d, and were drawn for $1 each. It seems to me that a delay in presenting checks for such small amounts is so frequent that, even though the defendant can give no explanation of the delay and claims to have forgotten to whom the checks were made, it is insufficient to raise even a reasonable suspicion that those checks were delivered after June 3d, and it is certainly insufficient to sustain a finding that for the sake of $9.10 the defendant, an attorney at law, has disobeyed an injunction and laid himself open to punishment for such disobedience by a court of which he himself is an officer.

For these reasons, I believe that the order cannot be affirmed. I have reached this conclusion without giving any attention to the points raised by the supplemental brief of the appellant, which, I believe, should be stricken from the files as scandalous through its allusions to the plaintiff's attorney, disrespectful to the court below by its impertinent reference to the learned justice who sat there, and discourteous to this court by its abuse of the privilege granted to defendant to file an additional brief. The defendant cannot even urge the flimsy excuse that he was carried away by zeal in caring for his client's interest, for in this case he appeared for himself, and there is no possible palliation for the vicious attack on the reputation of his adversary, or for the foolish attack on the justice who heard the motion.

Supplemental brief ordered stricken from the file, and order reversed, without costs to either party, and motion denied, without costs.

HENDRICK, J. I concur in the reversal of the order. I believe that the filing of the supplemental brief, containing, as it does,

an unwarranted, contemptible, and contumacious attack upon the trial judge, is a contempt of this court, and an order should be entered directing the attorney to show cause why he should not be punished for the contempt.

DELANY, J., concurs.